UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT LEE SYKES, JR.,      )
                                 )
      Plaintiff,              )
                                 )
v.                              )
                               )  Case No. 2:18-cv-713-GMB
BOARD OF TRUSTEES OF THE   )
UNIVERSITY OF ALABAMA,    )
                               )
      Defendant.          )

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. Pending before the court is the Motion for Summary Judgment filed by Defendant Board of Trustees of the University of Alabama ("the Board"). Doc. 28. Plaintiff Robert Lee Sykes, Jr. has filed a response in opposition to the motion. Doc. 32. The Board has filed a reply brief in support of its motion. Doc. 33. After careful consideration of the parties' submissions and the applicable law, and for the reasons that follow, the court concludes that the Motion for Summary Judgment is due to be granted.

## I. JURISDICTION AND VENUE

The court has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction, nor do they contest that venue is proper in the Northern District of Alabama. The court finds adequate

allegations to support the propriety of both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, Sykes began working as a police officer for the University of Alabama at Birmingham Police Department ("UABPD") in Birmingham, Alabama. Doc. 30-1 at 11.  During Sykes' employment, Anthony Purcell served as Chief of Police, Marvin Atmore and Zandral Washington were Deputy Chiefs of Police, and James Granade was Captain. Doc. 30-1 at 12.  Sykes, Chief Purcell, Deputy Chief Atmore, and Deputy Chief Washington are black, while Captain Granade is white. Doc. 30-1 at 12.  Purcell promoted Sykes twice during Sykes' tenure at UABPD, first to Field Training Officer in September 2013, and then to Corporal in December 2014. Doc. 30-1 at 16.  As Corporal, Sykes supervised shifts of approximately 12 to 15 police officers. Doc. 30-1 at 16.  While employed at UABPD, Sykes was subject to its Code of Conduct, which included standards for both on- and off-duty behavior. Doc. 30-1 at 15; Doc. 30-2 at 47–59.

### A.    Traffic Stop

At around 11:30 p.m. on July 4, 2017, Alabama State Trooper Michael Hale pulled over Sykes on Interstate 59 while Sykes was returning home from a barbeque at his parents' home in Uniontown, Alabama. Doc. 30-1 at 19; Doc. 30-2 at 67–68. Trooper Hale performed a breath analyzer test on Sykes. Doc. 30-1 at 21; Doc. 30-4 at 3.  After Sykes announced that he was a police officer, Trooper Hale informed

2

UABPD that he had pulled over Sykes and that he would not permit Sykes to drive home but would release him to the custody of another UABPD officer. Doc. 30-4 at 2–3; Doc. 30-1 at 19; Doc. 30-2 at 67. Trooper Hale later stated that he decided not to arrest Sykes because he did not want to arrest a police officer. Doc. 30-2 at 66. Deputy Chief Atmore directed Captain Granade to send an officer to the scene, so Granade sent Corporal Tonikos Vandiber. Doc. 30-4 at 3. Sykes also called UABPD Lieutenant Kerry Bester, who ultimately drove him home. Doc. 30-1 at 20. Trooper Hale issued citations to Sykes for speeding and possessing an open container of alcohol. Doc. 30-1 at 29–30; Doc. 30-2 at 67. Sykes denies having a container of alcohol in the vehicle. Doc. 30-2 at 66–67. Trooper Hale would have arrested Sykes for driving under the influence of alcohol ("DUI") if a UABPD officer had not arrived to drive him home. Doc. 30-4 at 3.

## B. Investigation

On July 6, 2017, Chief Purcell placed Sykes on administrative leave with pay pending the outcome of an investigation into the incident. Doc. 30-2 at 66; Doc. 30-1 at 19. Chief Purcell informed Sykes of this decision by providing him with a memorandum during a meeting in Chief Purcell's office. Doc. 30-1 at 19. Sykes claims that the statement in Chief Purcell's memorandum that Sykes was pulled over for DUI is false, because Sykes maintains that he was pulled over for speeding. Doc. 30-1 at 19.

Chief Purcell directed Captain Granade to conduct the investigation. Doc. 30-4 at 3; Doc. 30-2 at 66. Granade obtained a written statement from Sykes. Doc. 30-4 at 3. He also interviewed Trooper Hale, who explained why he stopped Sykes' vehicle and provided the results of the breath analyzer test. Doc. 30-4 at 3. Finally, Granade interviewed Corporal Vandiber and Lieutenant Bester, and he reviewed Sykes' personnel file. Doc. 30-4 at 3. Granade then prepared a written report summarizing his findings and provided the report to Deputy Chief Washington. Doc. 30-4 at 3; Doc. 30-4 at 5–9.

Trooper Hale told Captain Granade that he observed "what appeared to be a beer can in the center console" of Sykes' vehicle and that "he could smell alcohol on [Sykes'] person." Doc. 30-4 at 8. Trooper Hale stated that Sykes' breath analyzer tests registered .089 and .09 percent.[1] Doc. 30-4 at 8. He then made the decision in conjunction with his supervisor to release Sykes to the custody of a UABPD officer.[2] Doc. 30-4 at 8.

---

[1] The blood alcohol concentration limit for operating a motor vehicle in Alabama is .08 percent. Ala. Code § 32-5A-191(a)(1).

[2] Sykes argues that Trooper Hale's statements to Captain Granade constitute inadmissible hearsay. Doc. 32 at 2. These statements have been offered to explain UABPD's employment decisions, not to prove that Sykes was driving while intoxicated. *See* Fed. R. Evid. 801(c). Nevertheless, even assuming they are hearsay, the court may consider these statements at the summary judgment stage as long as they could be reduced to admissible form at trial. *See, e.g.*, *Jones v. UPS Ground Freight*, 683 F.2d 1283, 1293–94 (11th Cir. 2012) ("The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial.").

## C.     Disciplinary Decision

Captain Granade's report recommended that UABPD demote Sykes, suspend him without pay, and formally reprimand him for "his egregious unacceptable personal conduct." Doc. 30-4 at 9.  On July 13, 2017, Chief Purcell gave Sykes a written reprimand during a meeting. Doc. 30-3 at 3.  The letter explained that Sykes had violated UABPD's Code of Conduct and his oath of office, and concluded that the incident "demonstrated a lack of judgment and created a trustworthy and credibility issue for [Sykes] as a supervisor." Doc. 30-2 at 70.  Chief Purcell also demoted Sykes from Corporal to Police Officer, decreased his salary, and suspended him for two days without pay. Doc. 30-2 at 70.  Chief Purcell testified by declaration that he was concerned about Sykes' conduct for a variety of reasons: (1) Sykes violated multiple traffic laws, (2) he violated the UABPD Code of Conduct, and (3) Chief Purcell perceived the incident to have "seriously damaged [Sykes'] credibility" since he was a supervisor. Doc. 30-3 at 3.  Chief Purcell explained that he "hold[s] supervisors to a higher standard of conduct and performance, and will often discipline them more severely than lower ranked personnel for similar infractions." Doc. 30-3 at 3.

Chief Purcell also required Sykes to meet with Kelly Mayer, the UABPD Director of Human Resources Employee Relations. Doc. 30-1 at 24; Doc. 30-5 at 1–2.  Mayer told Sykes that he would be referred for a substance abuse treatment

assessment under UAB's Impaired Employee Program ("IEP"). Doc. 30-5 at 3. UAB permits employees with substance abuse issues to participate in IEP as an alternative to the termination of their employment. Doc. 30-5 at 3. First, employees must undergo an assessment by an approved substance abuse treatment program to determine if treatment is necessary. Doc. 30-5 at 3. Employees also must abide by any of IEP's recommendations, including participation in rehabilitation programs or substance abuse testing. Doc. 30-5 at 3. Employees are required to pay the cost of each drug test, which are about $50 each. Doc. 30-5 at 3.

Sykes met with Dr. Peter Lane, the Director of UAB's Addiction Recovery Program, for an assessment. Doc. 30-5 at 3. After their meeting, Dr. Lane told Mayer that he did not believe Sykes needed substance abuse rehabilitation treatment but that he had concerns about Sykes' alcohol use. Doc. 30-5 at 3. Thus, he recommended that Sykes undergo random substance abuse testing for six months to one year. Doc. 30-5 at 3. Following this recommendation, Mayer and Captain Granade met with Sykes on August 2, 2017 and told him that he would be required to undergo random substance abuse testing at least once per month for one year. Doc. 30-5 at 4. Sykes thereafter participated in random testing and tested negative every time. Doc. 30-1 at 29.

On August 18, 2017, Sykes filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that similarly

situated white employees with alcohol-related incidents "have not had to submit to drug and alcohol testing, nor made to pay for same, and have not been given the same severe level of punishment and restrictions" he received. Doc. 30-2 at 74. Sykes has identified three white UABPD officers that he claims were treated differently after comparable off-duty incidents involving alcohol: Darrell Catchings, Karl Martin, and Sarah Wolpert. Doc. 30-1 at 30.

## D.    Other UABPD Off-Duty Incidents

Darrell Catchings worked for UABPD as a Police Officer. Doc. 30-3 at 3.  On February 8, 2014, while off duty, Catchings "attempted to intervene" in a traffic stop conducted near an apartment complex by the Montevallo, Alabama Police Department. Doc. 30-3 at 4.  Catchings was under the influence of alcohol at the time. Doc. 30-3 at 4.  Police released him from the scene without a citation after verifying that he was a UABPD officer. Doc. 30-3 at 4.  Chief Purcell gave Catchings a written reprimand, suspended him for two days without pay, placed him on a 60-day probationary period, and referred him for a substance abuse treatment assessment. Doc. 30-3 at 4.  Chief Purcell did not demote Catchings because there is no rank lower than Police Officer at UABPD. Doc. 30-3 at 4.

Karl Martin also worked for UABPD as a Police Officer. Doc. 30-3 at 4.  On June 14, 2016, while off duty, Martin discharged his firearm during a dispute in the parking lot of a bar. Doc. 30-3 at 4.  Police were called to the scene, but Martin was

not arrested or issued a citation. Doc. 30-3 at 4. Chief Purcell gave Martin the opportunity to resign instead of being terminated, and "would have terminated his employment immediately" if he had refused to resign. Doc. 30-3 at 4.

Sarah Wolpert, another UABPD Police Officer, was present with Martin when he discharged his firearm. Doc. 30-3 at 4. UABPD's investigation revealed that Wolpert was intoxicated and involved in a physical altercation with another patron at the bar. Doc. 30-3 at 4. Like Catchings and Martin, she was not arrested or issued a citation. Doc. 30-3 at 4. Chief Purcell suspended Wolpert for two days without pay, but did not refer her for a substance abuse treatment assessment because he "did not believe her actions warranted that step." Doc. 30-3 at 4. Like Catchings and Martin, she could not be demoted because she served at the rank of Police Officer. Doc. 30-3 at 4.

## E.    Procedural History

Sykes filed suit on May 9, 2018 and amended his complaint on August 9, 2018. Docs. 1 & 15. He alleges that his race was a "motivating factor" in UABPD's decision to demote him, reduce his pay, and require him to undergo substance abuse treatment and testing. Doc. 15 at 8–10. Sykes asserts one claim for race discrimination under Title VII of the Civil Rights Act of 1964. Doc. 15 at 6–12. He alleges that UABPD's decision caused "financial loss, emotional distress, and loss of the enjoyment of life" due to "embarrassment, humiliation, shame, damage to

reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages." Doc. 15 at 8. He seeks monetary damages, injunctive relief, and reinstatement of his position as Corporal. Doc. 15 at 11.

The Board moves for summary judgment, arguing that Sykes has not established a *prima facie* case of race discrimination and that, even if he has, his claim fails at the *McDonnell Douglas* burden-shifting stage because UABPD had a legitimate, nondiscriminatory reason for its actions. Doc. 29 at 17–29. Sykes argues that he has met his burden to establish a *prima facie* race discrimination case by demonstrating that he was treated less favorably than similarly situated white employees. Doc. 32 at 4–7. Sykes offers no argument to rebut the Board's contention that his claim fails at the burden-shifting stage.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted).  The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## IV. DISCUSSION

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Title VII claims are "typically categorized as either mixed-motive or single-motive claims." *Quigg v. Thomas County Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). A mixed-motive claim is based on the allegation that "illegal bias, such as bias based on sex or gender, 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Id.* (quoting 42 U.S.C. § 2000e-2(m)). Single-motive claims, on the other hand, "require a showing that bias was the true reason for the adverse action." *Id.* Both single-motive and mixed-motive claims "can be established with either direct or circumstantial evidence." *Id.* Here, Sykes relies on circumstantial evidence to attempt to prove his Title VII claim.

Neither party characterizes Sykes' claim in briefing, although the Board appears to assume that it is a single-motive claim since it invokes the *McDonnell Douglas* burden-shifting framework. *See* Doc. 29 at 23–29. The distinction is an important one, as the Eleventh Circuit had ruled that "*McDonnell Douglas* is not appropriate for examining mixed-motive claims at summary judgment." *Quigg*, 814 F.3d at 1239. Here, the court concludes based on Sykes' factual allegations that his claim could be characterized as either a single-motive or mixed-motive claim. Specifically, Sykes alleges that his "race was a substantial or motivating factor in Defendant's unlawful and adverse treatment." Doc. 15 at 9. In the same vein, he alleges in the amended complaint that UABPD's disciplinary actions were "motivated by race discrimination." Doc. 15 at 5 & 8. However, Sykes has not characterized his claim or alleged the existence of a motivation other than race for Chief Purcell's decision. Accordingly, the court considers Sykes' claim within both the single-motive and mixed-motive frameworks.

## A.    Single-Motive Analysis

Single-motive claims require the well-worn *McDonnell Douglas* burden-shifting analysis. *Quigg*, 814 F.3d at 1237. Within this framework, the plaintiff first must establish a *prima facie* case of discrimination. *Id.* If he does so, the employer must provide a legitimate, nondiscriminatory reason for its decisions. *Id.* If the employer satisfies this burden, the onus shifts back to the plaintiff to show that the

employer's nondiscriminatory reason is "mere pretext." *Id.*

### 1.   Prima Facie *Case*

To establish a *prima facie* case of race discrimination, Sykes must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) UABPD treated similarly situated employees outside of his protected class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  The Board concedes the first three elements, *see* Doc. 29 at 18, so Sykes' *prima facie* case turns on whether he has adduced sufficient evidence that UABPD treated similarly situated white officers more favorably. Because Sykes has not done so, he cannot establish a *prima facie* case of race discrimination.

In disparate treatment claims, the plaintiff must identify comparators who are "similarly situated to the plaintiff in all relevant respects." *Rioux*, 520 F.3d at 1280. This means that both the "quantity and quality" of the misconduct must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (internal quotation marks omitted).  Where, as here, the plaintiff alleges discriminatory discipline, "[t]he most important factors . . . are the nature of the offenses committed and the nature of the punishments imposed." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999), *abrogated on other*

*grounds by Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019).  The

court must evaluate "whether the comparator is involved in the same or similar

conduct as the plaintiff yet disciplined in a different way." *Stone & Webster Const.,*

*Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1135 (11th Cir. 2012).

In opposition to the motion for summary judgment, Sykes has identified three

potential comparators: Wolpert, Catchings, and Quinton Rowser.[3] Doc. 32 at 6.

Wolpert and Catchings are white and Rowser is black.  Sykes argues that the relevant

conduct for Catchings and Wolpert was similar to his since both were involved in

alcohol-related off-duty incidents with police. Doc. 32 at 7.   And Sykes

acknowledges that both Catchings and Wolpert were disciplined for their incidents.

Doc. 32 at 7.  However, he argues that they were treated more favorably because

they were not required to undergo substance abuse testing. Doc. 32 at 7.  Sykes then

notes that Rowser, who was involved in a domestic dispute without police

intervention, was subject to substance abuse testing. Doc. 32 at 7.

Sykes' attempt to classify Rowser as a comparator fails because Rowser

belongs to the same protected class as Sykes. *See, e.g.*, *Flowers v. Troup County,*

*Ga. Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (holding that Title VII plaintiffs

must show that they were either replaced by or treated less favorably than "a

---

[3] In briefing, Sykes added Rowser as a comparator and effectively removed Martin, who was forced to resign, concluding that Martin was "not a valid comparator" because his behavior "involved the use of a firearm and endangering the lives of others at a bar." Doc. 32 at 6.

similarly situated person outside of [their] protected class").

Sykes' effort to cast Wolpert and Catchings as comparators likewise fails because they are not sufficiently similarly situated. Indeed, Wolpert and Catchings held different positions, responsibilities, and ranks than Sykes at the time of the relevant disciplinary actions. *See Rioux*, 520 F.3d at 1281 (holding that while a difference in rank is not dispositive in and of itself, lower-ranked employees may be disciplined differently than higher-ranked employees, "who are held to a higher level of professionalism and who are expected to set the standard of conduct"); *Thompson v. Tyson Foods, Inc.*, 939 F. Supp. 2d 1356, 1368 (M.D. Ga. 2013) ("Unquestionably, a difference in title and rank may be relevant on the issue of whether two proposed comparators are similar[ly] situated. Indeed, the distinction may be dispositive."). As a Corporal, Sykes was at least one rank higher than Wolpert and Catchings,[4] and his duties as a supervisor were materially different from those of a Police Officer.[5] Chief Purcell confirmed that a UABPD employee's responsibilities and rank are significant considerations in the severity of any disciplinary decision. Doc. 30-3 at 5. Specifically, he "hold[s] supervisors to a higher standard of conduct and performance, and will often discipline them more

---

[4] It is unclear from the record whether Field Training Officer, which was Sykes' position before his promotion to Corporal, is a rank higher than Police Officer. In his deposition, Sykes suggested that there was no rank between Police Officer and Corporal. *See* Doc. 30-1 at 12.
[5] Indeed, this difference is a primary motivation for Sykes' suit, as the discipline included a demotion from Corporal to Police Officer.

severely than lower ranked personnel for similar infractions" because incidents of misconduct damage their credibility and impede their ability to "set an example for their subordinates and other lower ranked officers." Doc. 30-3 at 3. Particularly where the record reflects that the employees' differing duties and ranks directly impacted the decisionmaker's consideration of the appropriate punishments, Sykes has not come forward with sufficient evidence of an appropriate comparator to make out a *prima facie* claim.

Differences in rank aside, Sykes also has made no showing that his alleged comparators' conduct was nearly identical to his. In fact, he has pointed to no similarities other than the presence of alcohol as a contributing factor in each of the off-duty events. Accordingly, even if the court were to ignore their differences in rank and duties, Sykes has not demonstrated that the purported comparators' conduct was sufficiently similar to his. For all of these reasons, Sykes has not introduced sufficient evidence to establish a *prima facie* case of discrimination. *See, e.g.*, *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 8 F.3d 1261, 1265 (11th Cir. 1996) ("Disparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts.").[6]

---

[6] Despite the differences in position and conduct, the disciplinary actions against Sykes, Catchings, and Wolpert were materially similar. As Police Officers, Catchings and Wolpert could not be demoted to a lower rank. However, like Sykes, both were suspended without pay, provided with a written reprimand, and placed on probation. Doc. 30-3 at 4. Chief Purcell referred both Sykes and Catchings for a substance abuse assessment, but he did not believe this step was necessary for Wolpert. Doc. 30-3 at 4. Thus, the only differences between Sykes' discipline and his alleged

### *2.* **McDonnell Douglas**

The Board argues that even if Sykes could make out a *prima facie* case, his claim would fail at the burden-shifting stage. Specifically, the Board claims that UABPD's decision to discipline Sykes for allegedly driving under the influence of alcohol and violating its Code of Conduct is legitimate and nondiscriminatory. Crucially, Sykes does not rebut this contention in his response brief and makes no argument with respect to UABPD's articulated reason for his discipline and why its justification is, in reality, a pretext for discrimination. This is insufficient to survive the Board's motion for summary judgment and fatal to Sykes' claim even if it survived the *prima facie* stage.

The Board's burden to proffer a legitimate, nondiscriminatory reason for its adverse employment action "is only an evidentiary one: a burden of production that can involve no credibility assessment." *Flowers*, 803 F.3d at 1336 (internal quotation marks omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). While Chief Purcell's stated reason for disciplining Sykes is objectively reasonable, Sykes has made no attempt to rebut this reason, and instead falls back on the argument that he

---

comparators' discipline were that Catchings and Wolpert were not demoted (because they could not be), Wolpert was not referred for a substance abuse assessment, and Sykes' probationary period lasted longer.[6]

was treated less favorably than Wolpert and Catchings. Sykes also disputes UABPD's characterization of the traffic stop, maintaining in his deposition and response brief that he was not stopped for driving under the influence. But this distinction is irrelevant. Sykes cannot claim merely that UABPD was mistaken about the purpose (or the outcome) of his traffic stop, as "an employer who treats two employees differently because of a mistaken belief in the existence of a neutral reason does not violate Title VII." *Silvera v. Orange County Sch. Bd.*, 244 F.2d 1253, 1261 (11th Cir. 2001); *see also Nix v. WLCY Radio/Rahall Comm'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Because he has not proffered sufficient evidence to create a genuine issue of material fact as to whether UABPD's reason for disciplining him is pretextual, the Board would be entitled to summary judgment even if Sykes had established a *prima facie* case of employment discrimination. *Chapman*, 229 F.3d at 1024–25.

### 3. *Mosaic of Circumstantial Evidence*

As referenced above, "establishing the elements of the *McDonnell Douglas* framework is not . . . the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Even in the absence of proper comparators,

a plaintiff "will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted).

Far from a convincing mosaic, Sykes has come forth with precious little circumstantial evidence from which a reasonable jury could infer intentional discrimination. Sykes was pulled over on an interstate highway while driving under the influence of alcohol, as evidenced by his breath analyzer tests and Trooper Hale's testimony. In lieu of arresting him, the state trooper chose to issue Sykes two citations and release him to the custody of a co-worker because he was a police officer. As a result of this incident, Chief Purcell demoted Sykes, reduced his pay, and suspended him. Sykes pointed to two lower-ranked white officers who were disciplined similarly for off-duty conduct involving alcohol except that they could not be demoted because of their rank.

Like Sykes, Corporal Quinton Rowser, who is black, was required to undergo substance abuse testing after an off-duty incident. Sykes focused on Rowser in briefing, characterizing Rowser's substance abuse testing requirement as evidence of UABPD's discriminatory treatment of black employees. But Chief Purcell

explained that he holds supervisors to a higher standard of personal and professional conduct than police officers, plus the evidence in the record confirms that Rowser's misconduct—a physical domestic dispute—was substantially different than the incidents involving Sykes, Catchings, or Wolpert. And the fact that Chief Purcell belongs to the same protected class as Sykes further cuts against an inference of intentional discrimination. *See, e.g.*, *Holston v. Sports Authority, Inc.*, 136 F. Supp. 2d 1319, 1335 (N.D. Ga. 2000) ("As the Eleventh Circuit has noted, when the decision makers are in the same protected class as the employee complaining about an adverse employment decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about.") (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)). Moreover, the record reflects that UAB's Impaired Employee Program is managed by human resources Director Kelly Mayer and operates independently from UABPD. Doc. 30-5 at 2–3. Mayer refers employees to a particular treatment program and coordinates with the treatment provider regarding the next steps, and she followed this protocol with Sykes. Doc. 30-5 at 2–3.

In sum, the record reflects that Sykes was disciplined for off-duty conduct Chief Purcell found to be objectionable, the disciplinary decision was comparable to the discipline his fellow officers received for off-duty conduct, and the subsequent procedures requiring Sykes to undergo drug and alcohol testing were consistent with

those applied to all UAB employees referred to treatment for potential substance abuse issues. Sykes has not directed the court to a convincing mosaic of circumstantial evidence that Chief Purcell, Mayer, or any other decisionmaker discriminated against him on the basis of his race. Accordingly, Sykes' claim cannot survive summary judgment under a single-motive theory.

## B.    Mixed-Motive Analysis

For mixed-motive claims, the plaintiff must produce "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action." *Quigg*, 814 F.3d at 1239 (internal quotation marks omitted). Thus, a reasonable jury must be able to conclude, "by a preponderance of the evidence, that [Sykes' race] was a motivating factor for an adverse employment decision." *Id.* The Eleventh Circuit has characterized this as a "straightforward inquiry into whether the plaintiff has presented sufficient evidence of mixed-motive discrimination to establish a jury issue." *Id.* at 1240.

Even if considered in the context of a mixed-motive analysis, Sykes' claim fails for the reasons already discussed. The Eleventh Circuit has held that its mixed-motive framework, which asks whether there is sufficient evidence that a protected characteristic was a motivating factor for the adverse employment action, "requires the same analysis" as the mosaic-of-circumstantial-evidence test, which addresses

"whether the plaintiff has presented sufficient evidence of mixed-motive discrimination to establish a jury issue." *Quigg*, 814 F.3d at 1240.  As stated above, Sykes falls far short of presenting sufficient evidence that race was a motivating factor in Chief Purcell's decision to discipline him or in any of the procedures that followed.  Accordingly, even under a mixed-motive analysis, Sykes has not created a genuine issue of material fact precluding the entry of summary judgment.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant Board of Trustees of the University of Alabama's Motion for Summary Judgment (Doc. 28) is GRANTED, and all claims asserted by Plaintiff Robert Lee Sykes Jr. are DISMISSED with prejudice.

A final judgment will be entered separately.

DONE and ORDERED on October 21, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE